IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 04-00197 HG |
| | ) |
| Plaintiff, | ) MEMORANDUM OF LAW |
| | ) |
| vs. | ) |
| | ) |
| FRANCISCO OROZCO, *ET AL.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM OF LAW

### I. FACTUAL BACKGROUND AND ARGUMENT SUMMARY

According to discovery provided to date by the government, the following allegedly occurred:

A. *The First FedEx Parcel– California evidence unlawfully obtained:*

On January 14, 2003, at approximately 7:30 a.m., six officers of the "L. A. Impact Task Force, Burbank Airport Narcotics Enforcement Team" were "working inbound parcels at FedEx, 11340 Sherman Way, Sun Valley, California".

Detective Carlos Gomez, one of these six officers, reported that he observed a suspicious parcel. He described the parcel as a "large brown box bearing FEDEX tracking #83753595535. The parcel had a handwritten airbill, was being sent Priority Overnight, and the shipping charges of $65.00 were paid in cash.

The listed sender on the airbill was "Jubilee Logan, 110 operations Rd, Hilo HI 96720, 808-966-9169." The listed recipient was "Francisco Orozco, 1710 West Victory Blvd Apt. E, Burbank CA 91506, 818-209-8769."

Detective Gomez reported that the parcel was "suspicious in that it was being sent priority overnight from a known narcotics hub area, the shipping charges were paid in cash and the seams of the box were taped (frequently done in narcotics parcels in order to try and keep odors from escaping). These are all common characteristics of a narcotics parcel."

Next, Detective Gomez reported that he called the recipient, Mr. Orozco's, telephone number, finding that it was a cell phone/pager, and reached the telephone's voice mail. The telephone number was thus a working number, which the detective says that he called several times to leave voice messages and numeric pages, requesting a return telephone call from Mr. Orozco.

Without any further information, Detective Gomez reported that, *"Believing the parcel contained narcotics and/or narcotics related currency, I detained the parcel for further investigation, and gave FEDEX a receipt. SAS Herbert, Det. Cater, SA Linch, Det. Brown, Det. Calderon, and I then took the parcel to the listed recipient address."* This warrantless seizure of the First Fedex Parcel without probable cause was unlawful.

2

Upon arrival at Mr. Orozco's residence, which was the same address given in the FedEx shipping label, three of the six task force officers approached the front door; the other three concealed themselves outside. Detective Gomez reported that, after showing police credentials and announcing that he was a policeman, the three officers were "asked to come in" by Mr. Orozco's mother. The reporter then claims that Mr. Orozco consented[1] to search of the subject FedEx parcel, which he said contained coffee, and that the search revealed a red cooler with a white lid containing coffee. Detective Gomez reported that *"there was nothing suspicious with either the coffee or the cooler. We thanked them for their time and left the residence."*

Detective Gomez' report demonstrates that he left Mr. Orozco's residence with no probable cause obtained from his investigation of the cooler.

Not satisfied with the negative results of Detective Gomez' crew's search of the First FedEx Parcel, Detective Cater reports that he went back to the residence, identified himself as a police officer, and says that he asked for and received an invitation to come in and have another look at the cooler[2]. The detective reports that Mr. Orozco agreed that he could remove the interior liner from the cooler,

---

[1] This allegation is not conceded by the defense.

[2] This allegation is disputed.

where cash and related incriminating paperwork was found. Thereafter, statements were obtained from Mr. Orozco, and a warrantless general search of the residence was conducted, disclosing other documentary evidence of FedEx shipments to Hawaii. Detective Cater reports that all were pursuant to Mr. Orozco's consent, which is disputed.

The evidence obtained from Mr. Orozco's residence by the California task force officers was unlawfully seized, without a warrant, and was also the fruit of the prior unlawful warrantless seizure of the First FedEx Parcel from the California FedEx facility without probable cause.

B. *The Second FedEx Parcel– Hawaii evidence unlawfully obtained:*

The California police then telephoned the Honolulu Airport Task Force, using information contained in a copy of another FedEx airbill obtained during the unlawful search of Mr. Orozco's residence, seeking to intercept and detain the Second FedEx Parcel prior to its being delivered to the intended recipient in Hilo, Hawaii.

Hilo task force officer Fourmy reports that he contacted the FedEx Hilo branch office manager, Lance Lamons, regarding the Second FedEx Parcel, and learned that it would be arriving in Hilo at about 2:30 p.m. on the same afternoon, January 14, 2003. Agent Fourmy reports that "Lamons indicated that *he was able*

*to set the parcel aside for a canine screening upon arrival in Hilo.* Lamons indicated that the parcel would not be scanned as arriving in Hilo until further notice by the police." When agent Fourmy arrived and contacted Mr. Lamons, *Lamons had already taken the parcel from the FedEx delivery stream, and placed it in his office "for the police."* Fourmy reports that "the parcel had been visibly damaged during transit and a separation between the box flaps which were not well taped and partially open, thereby exposing its contents, which appeared to be a blue cooler with a white lid."

Agent Fourmy signed for the parcel and, with another agent, carried the parcel outside the FedEx office. There, *the parcel was "screened by Officer Fukuda with a trained canine but with negative results."*

Nonetheless, despite the negative dog sniff, agents Fourmy and Correia seized the parcel and took it from the Hilo FedEx facility to the Hawaii County Police Department, removing it from the FedEx delivery stream without reasonable suspicion or probable cause. This was an unlawful, warrantless seizure.

Upon arrival at the Hawaii County Police Department, the police say they weighed the parcel and had the same "trained" canine again sniff the parcel, reporting that "a secondary canine screening by Officer Fukuda on the subject

5

parcel resulted in a positive alert by the trained canine."

Using the information unlawfully obtained by the California police, and that obtained after the parcel Second FedEx Parcel was unlawfully seized at FedEx Hilo and brought to the Hawaii County Police Department, supplemented by "confidential informants" information purportedly received, by a miraculous coincidence, from two separate informants on the same day, a federal search warrant was obtained from Magistrate Kobayashi at approximately 9:50 p.m., January 14. The Second FedEx Parcel was then opened, disclosing two blue coolers containing illegal drugs that are a subject of this action.

Since the information provided by California and Hawaii police in support of the federal search warrant for the Second FedEx Parcel was based upon the prior unlawful search of the defendant's residence and unlawful seizures of the California and Hawaii FedEx parcels, the search warrant affidavit must permit the magistrate to find probable cause within its four corners, without consideration of the tainted information.

After redacting the illegally tainted information from the affidavit in support of the search warrant, there remains only the "confidential informants" information to support its issuance.

But the "confidential informants" information provided in the search

warrant affidavit and application does not have any of the requisite "indicia of reliability" to support issuance of the warrant. Accordingly, the drug evidence seized under the search warrant's authority must be suppressed.

The Hilo police subsequently sought and obtained an anticipatory "beeper" warrant, effected a controlled delivery of the Second FedEx Parcel, and obtained other physical evidence and statements from the intended recipients of the parcel. All of this evidence was illegally tainted by the unlawful searches and seizures that preceded it in California and Hawaii, and must also be suppressed.

## II.    ARGUMENT

### A.    *The warrantless seizure of the First FedEx Parcel Violated the Fourth Amendment.*

The first clause of the Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." Searches and seizures conducted without prior approval by a judge or magistrate are, *per se*, unreasonable, and subject to only a few well-delineated exceptions. *See Minnesota v. Dickerson*, 508 U.S. 366 (1993). A "seizure" of property occurs when there is some meaningful interference with an individual's possessory

interests in that property. *See United States v. Place*, 103 S.Ct. 2637, 2649 (1983).

If a package is detained and inspected, it must be determined whether the government's interference with that interest was reasonable within the meaning of the Fourth Amendment. *Id.* Governmental interference is reasonable only if the initial detention of the package was based on reasonable and articulable suspicion that it contains contraband or evidence of illegal activity. *See United States v. Aldaz*, 921 F.2d 227, 229 (9th Cir. 1990).

In determining whether reasonable suspicion exists, reviewing courts must look at the "totality of the circumstances" to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Hernandez*, 313 F.3d at 1210 (9th Cir. 2002) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750 (2002)).

In the instant case, California Detective Gomez lacked reasonable suspicion to detain, much less to seize and then take away from FedEx the First Parcel, thereby violating the defendant's Fourth Amendment right against an unreasonable seizure.

Detective Gomez identified five factors which he claims led him initially to detain the package. First, the shipping label was handwritten, Second, the parcel was to be a priority overnight delivery. Third, the parcel's shipping was paid in

cash. Fourth, the package was sent from a known drug shipment hub. Fifth, the seams of the box were taped.

Taken together, however, the factors do not rise to the level of reasonable suspicion necessary for the initial detention of the subject parcel. The fact that the shipping label was handwritten (it is still legal not to use a computer), that it was a priority overnight delivery (likely predominate practice with any FedEx customer), that the $65 shipping cost was paid for in cash (still an acceptable form of payment in today's society, especially of such a small sum) in no way suggest that the parcel contained contraband or evidence of illegal activity, as these are all common characteristics of a great many of the parcels that FedEx ships. The fourth and fifth claims, that Hilo is a "known narcotics shipment hub," and that the box had taped seams typical of narcotics shipments are not supported by evidence. Detective Gomez lacked reasonable and articulable suspicion even to initially to detain the subject parcel for inspection.

More important, however, is the fact that *the California police, without probable cause, actually seized and took the subject parcel away from the FedEx facility, out of the stream of FedEx deliveries.* These six special drug interdiction task force agents, who were admittedly "working inbound parcels" inside the California FedEx facility, did not first call for a well-trained drug sniffing dog, or

take any other investigative action sufficient to warrant the seizure of the First Parcel before they took it away from FedEx. Their taking was not a mere "Terry type" temporary detention, since the California police gave FedEx their receipt for the parcel. They weren't planning to return the parcel back into the stream of FedEx parcel deliveries. Nor did the California police seek an "anticipatory search warrant" *See United States v. Garcia*, 882 F.2d 699 (2d Cir. 1989), *United States v. Ruddell*, 71 F.3d 331 (9th Cir. 1995). Instead, Detective Gomez illegally pursued a "hunch" that the parcel contained something illegal, improperly confronting its recipient in force at the delivery address shown on the parcel, hoping there to gain access to the contents of the First Fedex Parcel, his residence and its contents.

Compare the factual situations discussed and approved in *United States v. Place*, 462 U.S. 696, 710, at note 9 (1983) (citing *Florida v. Royer*, 460 U.S. ___ (1983)), *United States v. Hernandez*, 313 F.3d 1206, 1210 (9th Cir. 2002), and *United States v. Aldaz*, 921 F.2d 227 (9th Cir. 1990). There, temporary "Terry type" detention of a package in transit *until* a *well-trained* drug sniffing dog *alerted to narcotics*, thus providing probable cause to obtain a search warrant, was the proper procedure. Here, though, California Detective Gomez just seized the First Fedex Parcel from FedEx on a "hunch," without reasonable and articulable

suspicion, or certainly without probable cause, violating the Fourth Amendment.

All of the drug, documentary and testimonial evidence subsequently seized in this case flowed directly or indirectly from the illegal seizure of the First Fedex Parcel by Detective Gomez and his six-officer California crew; and, as "fruits of the poisonous tree," all such derivative evidence must be suppressed. *See Segura v. United States*, 468 U.S. 796 (1984) (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)).

**B.**  *The Interception, Then Continued Detention of the Second FedEx Parcel After the Narcotics Detection Dog Failed to Alert, Violated the Fourth Amendment.*

Using information received from the California police, which they had in turn obtained as fruits of the unlawful seizure of the First FedEx Parcel and the warrantless unlawful search of the defendant's residence, the Hilo task force intercepted the Second Parcel with the cooperation of FedEx Hilo. Since the interception and detention of the Second FedEx Parcel was either a direct or an indirect derivative of the illegal California searches and seizures of the First FedEx Parcel and the defendant's residence, the evidence obtained by the Hilo police in connection with the Second FedEx Parcel and its consequent controlled delivery must be suppressed. *Segura v. United States*, 468 U.S. 796 (1984).

Even if there had been enough *untainted* evidence to permit the Hilo task force initially to have intercepted and temporarily detained the Second FedEx Parcel, which has not been articulated, their continued detention and taking away of the Second FedEx Parcel from FedEx Hilo to the police station after the narcotics detection dog failed to alert violated the Fourth Amendment. It is conceded that, in the ordinary case, once an officer has reasonable suspicion that a package contains contraband or evidence of an illegal activity, the detention of such package for a reasonable time until it can be subjected to a dog-sniff test does not constitute a seizure within the meaning of the Fourth Amendment. *See United States v. Aldaz*, 921 F.2d 227 (9th Cir. 1990). Additionally, if a detection dog positively alerts, the officer's suspicions ripen into probable cause to believe that the package contains contraband. *See United States v. Hillison*, 733 F.2d 692, 696 (9th Cir. 1984). If a detection dog *fails* to alert, however, an officer does not have probable cause or reasonable suspicion to continue to detain the package.

In this case, Hilo police had FedEx Hilo pull the package for a drug detection dog sniff, and in fact examined the Second FedEx Parcel while they and the parcel were still at the FedEx Hilo facility, just outside the building. Once the detection dog failed to alert, Hilo police no longer had reasonable suspicion, much less probable cause, to detain the Second FedEx Parcel. Regardless, Hilo police

actually seized the parcel, receipted for it from FedEx, and took it to their headquarters for a "second sniff" by the same dog[3]. Taking the Second Fedex Parcel to Hilo County Police Department for the purpose of conducting a future search, out of the stream of FedEx deliveries, constituted an illegal seizure in and of itself that mandates suppression of the evidence in and derived directly or indirectly from that parcel.

  C. *The search warrant and "beeper warrant" for the Second FedEx Parcel were obtained without probable cause.*

Finally, the search warrant and "beeper" warrants for the Second FedEx Parcel subsequently obtained by the Hilo police from Magistrate Kobayashi fail for lack of probable cause. Fed. Rules Crim. Pro. 41(a).

First, the applications for the warrants contain information that was derived from the unlawful search of the defendant's California residence after the unlawful seizure of the First FedEx Parcel by the California police which must be redacted from the warrant applications.

In reviewing the magistrate's decision that probable cause existed for issuance of the warrant to open the Second FedEx Parcel, and the subsequent

---

[3]The training and reliability of the particular dog and its handler must be demonstrated. We submit that a 50% correct drug sniffing dog does not rise to the "well-trained" level that the Supreme Court approved in *United States v. Place*.

"beeper" warrant, the Court is limited to the information contained within the four corners of the affidavits supporting the applications for the warrants. *United States v. Huguez-Ibarra*, 954 F.2d 546 (9th Cir. 1992). The substantially identical affidavits in support of the search and "beeper" warrants for the Second FedEx Parcel contained information gained in the warrantless seizure of the First FedEx Parcel and the subsequent warrantless search of the defendant's California residence. The government has the burden of justifying the warrantless searches and seizures at the defendant's residence. To justify warrantless entry into the defendant's residence, the government must demonstrate both probable cause *and* the existence of an exception to the warrant requirement. Illegally obtained evidence from an unlawful warrantless search is not to be considered in evaluating the existence of probable cause. *Id*, at 954 F.2d 551-552 (*citing Wong Sun v. United States*, 371 U.S. 471 (1963).

The surviving information in the warrants' supporting affidavits purports to come from "confidential informants" who must be shown under the totality of circumstances to be reliable. *Illinois v. Gates*, 462 U.S. 213 (1983). There is no information within the affidavit that establishes the reliability of the informants' information, allegedly and miraculously provided to the Hilo police coincident with the unlawful seizure of the First FedEx Parcel and derivative evidence in

California on the same day. *See United States v. Reeves*, 210 F.3d 1041 (9th Cir. 2000). Thus, the warrant was issued improperly without probable cause.

All evidence obtained from the First and Second Fedex Parcels, the warrantless search of the defendant's residence in California, and that derived indirectly or indirectly from these searches and seizures, must therefore be suppressed. See Mapp v. Ohio, 367 U.S. 643 (1961); Ker v. California, 374 U.S. 23 (1963).

DATED: Honolulu, Hawaii, March 20, 2007.

_____
Barry D. Edwards
Attorney for Defendant