EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

LORETTA SHEEHAN #4160
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail: loretta.sheehan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00197HG-04 |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN OPPOSITION |
| | ) | TO MOTION TO SUPPRESS |
| v. | ) | EVIDENCE; TABLE OF CONTENTS |
| | ) | AND TABLE OF AUTHORITIES; |
| FRANCISCO OROZCO,  (04) | ) | CERTIFICATE OF SERVICE; |
| | ) | EXHIBITS A-C |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS EVIDENCE**

**TABLE OF CONTENTS AND TABLE OF AUTHORITIES**

**CERTIFICATE OF SERVICE**

**EXHIBITS A - C**

TABLE OF CONTENTS

TABLE OF AUTHORITIES

I.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.   FEDEX PARCEL #1 WAS NOT SEIZED
          UNTIL THE CASH AND DRUG NOTES WERE FOUND  . . . . . . 9

     B.   ASSUMING SEIZURE *ARGUENDO*,
          DETENTION WAS OF A SHORT DURATION
          AND SUPPORTED BY REASONABLE SUSPICION . . . . . . . 10

     C.   DEFENDANT'S STATEMENTS AND CONSENTS
          TO SEARCH WERE PROVIDED VOLUNTARILY   . . . . . . . 12

     D.   FEDEX PARCEL #2 WAS NOT SEIZED
          WHEN IT WAS SET ASIDE FOR A
          CANINE SCREENING, BECAUSE THE DELIVERY
          OF FEDEX PARCEL #2 WAS NOT DELAYED  . . . . . . . . 14

     E.   THE SEARCH WARRANT FOR FEDEX PARCEL
          #2 WAS SUPPORTED BY PROBABLE CAUSE  . . . . . . . . 15

     F.   IN THE ALTERNATIVE, THIS COURT
          SHOULD REFUSE TO SUPPRESS EVIDENCE
          BASED UPON THE GOOD FAITH EXCEPTION . . . . . . . . 18

III. CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . 18

TABLE OF AUTHORITIES

CASES                                                    PAGE(s)

Illinois v. Gates, 462 U.S. 213 (1983)  . . . . . . . . . .  15

United States v. Cormier, 220 F.3d 1103
     (9th Cir. 2000)  . . . . . . . . . . . . . . . . . . . . .  13

United States v. Crasper, 472 F.3d 1141
     (9th Cir. 2007)  . . . . . . . . . . . . . . . . . . 12, 13

United States v. England, 971 F.2d 419
     (9th Cir. 1992)  . . . . . . . . . . . . . . . . 9, 10, 14

United States v. Gil, 58 F.3d 1414 (9th Cir.),
     cert. denied, 516 U.S. 969 (1995)  . . . . . . . . . . .  16

United States v. Gill, 280 F.3d 923 (9th Cir. 2002)  . . . . 9, 14

United States v. Hernandez, 313 F.3d 1206
     (9th Cir. 2002)  . . . . . . . . . . . . . . . . . 10,11, 15-16

United States v. Leon, 468 U.S. 897 (1984)  . . . . . . . . .  18

United States v. Ocampo, 937 F.2d 485
     (9th Cir. 1991)  . . . . . . . . . . . . . . . . . . . .  15

United States v. Peacock, 761 F.2d 1313 (9th Cir.),
     cert. denied, 474 U.S. 847 (1985)            . . .  16

United States v. Pitts, 6 F.3d 1366
     (9th Cir. 1993)  . . . . . . . . . . . . . . . . . . . .  15


MISCELLANEOUS

U. S. Const. amend. IV. . . . . . . . . . . . . . . . . 9, 10, 14

## MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS EVIDENCE

The United States of America, through Assistant U.S. Attorney Loretta Sheehan, opposes the Motion to Suppress filed by Francisco Orozco, a.k.a. "Paco," (hereinafter "Defendant") on six grounds, to wit:

1.   FedEx Parcel #1 was not seized at the Fed Ex facility; rather, it was seized only after the $16,000 and drug notes were found.

2.   To the extent that a seizure of FedEx Parcel #1 by law enforcement occurred at the FedEx facility, such detention was de minimus and supported by reasonable suspicion.

3.   Defendant voluntarily consented to the search of FedEx Parcel #1, the cooler within FedEx Parcel #1, and his home.

4.   FedEx Parcel #2 was not seized when FedEx manager Lance Lamons set aside the parcel, nor when SA Fourmy took FedEx Parcel #2 to the Hawaii County Police Department in that delivery of the parcel was not delayed.

5.   A "four corners" examination of the search warrant reveals that it contains probable cause to believe that FedEx Parcel #2 contained controlled substances, even if one excises the information that the canine failed to alert, then alerted, on FedEx Parcel #2.

6.   Evidence from FedEx Parcel #2 should not be suppressed as the agents executed the search warrant in good faith.

1

## I.    FACTS

On January 14, 2002 at about 7:30 a.m., members of the Los Angeles Impact Task Force, a subdivision of the Burbank Airport Narcotics Enforcement Team, were inspecting parcels at the Federal Express office in Sun Valley, California.

Officer Carlos Gomez noticed a suspicious parcel.  The parcel was a large brown box, sent "Priority Overnight."  The shipping charges for the box, $65.00, had been paid in cash.  All the seams of the box were taped.  The listed sender on the airbill was "Jubilee Logan" in Hilo, Hawaii.  The listed recipient was "Fransico Orozco" in Burbank, California.  The parcel (hereinafter "FedEx Parcel #1") was scheduled to be delivered that day, before 5:00 p.m.

Officer Gomez called the telephone number listed for the recipient, but was unable to reach anyone.  Officer Gomez, and his team members, decided to deliver the parcel to "Fransico Orozco."  They immediately proceeded to Defendant's home.

Upon arrival at the listed address, Special Agent Eric Lynch, Detective Sandra Brown and Officer Carlos Gomez approached the front door.  All of the other officers waited in front of the complex, out of view.  Officer Gomez knocked at the door, and Defendant's mother, Maria Bertha Orozco Sanchez, answered the door.  Officer Gomez identified himself and his department verbally and by showing his police identification card.  Officer Gomez explained to Ms. Sanchez that he had a package addressed to

2

Francisco Orozco.  Officer Gomez asked if he was there.  Ms.
Sanchez said that "Francisco" was her son, and that he was
inside.  Ms. Sanchez invited the officers into the home.

          Inside the living room, Officer Gomez met Defendant.
Officer Gomez asked him if he was "Francisco," and Defendant said
that he was.  Officer Gomez identified himself and his department
verbally and by displaying his police identification card.
Officer Gomez told Defendant that he was not in any kind of
trouble, and that he wasn't under arrest, but stated that they
would like to talk with him.  Officer Gomez explained that they
had a parcel, addressed to Defendant, and that they wanted to ask
him some questions about it.  Defendant agreed.

          Officer Gomez showed Defendant the airbill and asked if
that was him and Defendant said yes.  Officer Gomez asked
Defendant if he was expecting a package and Defendant said yes.
Officer Gomez asked Defendant if he knew who had sent him the
package and Defendant said yes, that it was a friend of his.
Officer Gomez asked what they would find if they opened the
package and Defendant said "coffee."  Defendant asked if they
wanted to look inside the package and Officer Gomez said yes.
Defendant then said that they could open the package.

          Officer Gomez opened the package and found that it
contained a small, red, Coleman cooler.  The cooler had a piece
of clear tape holding down the lid.  Officer Gomez peeled off the

                                    3

tape, opened the cooler, and found bags of coffee inside.
Officer Gomez asked why Defendant would be getting bags of coffee
and Defendant said that they drink a lot of coffee.  Officer
Gomez thanked Defendant for his time and all of the law
enforcement officers left the home.

Outside the home, the L.A. IMPACT team members talked.
Detective John Cater found the situation suspicious.  Why would
anyone pay $65 in cash to send coffee via "priority overnight"
Federal Express?  Detective Cater had encountered situations in
which drugs and money were secreted inside the linings of
coolers.  They decided to re-approach Defendant's house.

Detective Cater and SA Herbert went back to Defendant's
home.  They knocked.  Detective Cater identified himself and his
office verbally and by showing his police identification card.
Detective Cater asked Defendant and Defendant's mother, Maria, if
they would mind if he looked at the cooler.  They said that he
could look at it and they asked him to come in.

Detective Cater and SA Herbert entered the home.
Detective Cater picked up the cooler and took the bags of coffee
out of it.  Detective Cater examined the cooler and noticed an
unusual amount of spray foam around the handle.  He also noticed
that the empty cooler weighed more than an ordinary cooler.
Detective Cater noticed that the white interior liner appeared
tampered.  Detective Cater asked if he could take the liner out

4

of the cooler and both Defendant and his mother, Maria, said "yes."

Detective Cater began to take the liner out and Defendant blurted out, "I need to call my lawyer." The officers said nothing. As Detective Cater took the liner out, he noticed that there was money hidden under the liner. Detective Cater asked, "What's this?" Defendant answered, "That's from my vitamin business." See Exhibit A. Detective Cater then telephoned Officer Gomez. Officer Gomez came to the front door, knocked, and was admitted into the residence.

Once Officer Gomez was inside, Detective Cater explained that he had found some money hidden in the liner of the cooler. At no time did Defendant make any telephone calls to anyone, including a lawyer.

Officer Gomez asked Defendant whose money it was and Defendant said that it was his. Officer Gomez asked how much money was in the cooler and Defendant said, "$15,000." Officer Gomez asked Defendant why he ships cash in this way and Defendant said that it was done that way to avoid paying taxes. Officer Gomez asked him who it was who had sent him the money and he said that it was a friend. Officer Gomez asked what the money was for and Defendant said that it was for his "vitamin business." Officer Gomez asked Defendant how long it had been since he had paid taxes and Defendant said that it had been about three years.

5

Officer Gomez asked Defendant if he had a business card for his business and he said no. Officer Gomez asked Defendant if he had a catalogue or any kind of order form from the vitamin business, and Defendant said no. Officer Gomez asked Defendant if he had any kind of documentation or paperwork showing that he was involved in the sale of vitamins and Defendant said no.

Officer Gomez asked Defendant if "Jubilee Logan" was a real person and Defendant said yes; Jubilee Logan was a man whom he had met at a seminar in Hawaii. Defendant said that part of the money was also to pay different people who work for him. Officer Gomez asked how much money these people make and Defendant said that they make all different amounts.

Officer Gomez asked Defendant and Defendant's mother, Maria, if they could search the residence, and both of them said yes. A search was commenced.

Officer Gomez continued to ask Defendant questions during the search. Officer Gomez asked Defendant questions about the vitamin business--how long he had been in it, the business address and phone, questions about inventory, sales methods, and profitability.

During the search, two recent Federal Express airbills were found, one of them had just been sent the day prior. That airbill had a FedEx tracking number 791275222041. The airbill showed the sender as "Francisco Orozco." The listed recipient

6

was "Mat Rubio" in Hilo, Hawaii.  The receipt showed that it was

a 45-pound box and that Defendant had paid $401.88 to send it

"priority overnight."  See Exhibit B.  The second Federal Express

airbill showed that Defendant had shipped a parcel to "Estephani

Rosario" in Hilo, Hawaii, on January 8, 2002, again, "priority

overnight," at a cost of $103.00.

        They also found an itinerary printed out from

"Globetrotter Travel," which showed that Defendant had been

scheduled to fly to Hilo the previous day.  The itinerary

indicated a one-way ticket for which Defendant had paid $670.00.

        At some point, the cooler containing the $15,000 was

taken from the home and placed outside.  Detective Dan Yadon of

the Burbank Police Department came to the home with a narcotics

detecting canine, "Roxy."  Officer Gomez asked Defendant if he

would allow Detective Yadon and Roxy to come in and sniff the

house for narcotics.  Again, Defendant and his mother said yes.

Roxy did not alert to the odor of narcotics in the home.

Everyone left the residence.

        Outside the residence, Roxy alerted to the odor of

narcotics emitting from the rear passenger seat of a car

registered to "Bertha Orozco."  This was Defendant's mother's

car.  Defendant's mother permitted officers to search her car,

but nothing was found.

                                    7

The California agents telephoned agents with the Drug Enforcement in Hawaii and informed them that they should look for a parcel arriving in Hilo, Hawaii, addressed to a "Mat Rubio."

On January 14, 2003, DEA Special Agent Jesse Fourmy telephoned the Federal Express manager in Hilo, Hawaii, and asked about the FedEx Parcel addressed to "Mat Rubio" (hereinafter FedEx Parcel #2). According to Lance Lamons, the Federal Express manager, FedEx Parcel #2 was scheduled to arrive in Hilo on January 14, 2003 at 2:30 p.m. FedEx Parcel #2 was scheduled to be delivered to Mat Rubio on January 15, 2003 before 5:00 p.m. Mr. Lamons promised, however, to put FedEx Parcel #2 aside for a canine screening upon arrival in Hilo.

At 3:00 p.m., DEA Special Agent Jesse Fourmy picked up FedEx Parcel #2 and brought it outside the Federal Express office. Hawaii County Police Officer Paul Fukuda ran his narcotics-trained canine past FedEx Parcel #2, but the dog did not alert. DEA SA Fourmy took FedEx Parcel #2 back to the Hawaii County Police Department office for a secondary canine screening. In the HCPD Hilo Vice Section, a secondary canine screening by Officer Fukuda resulted in a positive canine alert.

Also during January 14, 2003, in Honolulu, Hawaii, DEA Task Force Officers Damien Mendiola and Jack Wright conferred with the California officers who had intercepted FedEx Parcel #1 and with officers from Hilo, Hawaii, who had received recent

8

information regarding a parcel arriving for a "Matt Rubio."
Based upon the information that they received, they drafted a
search warrant to open and search FedEx Parcel #2.  See Exhibit
C.  The Honorable Leslie E. Kobayashi approved and signed the
warrant at 9:50 p.m.  At approximately 10:05 p.m. SA Fourmy
opened FedEx Parcel #2 and found blue coolers which contained,
within the lining of the coolers, 858 grams of crystal
methamphetamine and 994 grams of cocaine HCl.

## II.   ARGUMENT

### A.   FEDEX PARCEL #1 WAS NOT SEIZED UNTIL THE CASH AND DRUG NOTES WERE FOUND

Defendant argues for suppression on the theory that the
L.A. Impact Team "seized" FedEx Parcel #1 without reasonable
cause when it picked up FedEx Parcel #1 at the Burbank Airport
FedEx station.  This argument should be rejected as the L.A.
Impact Team did not seize FedEx Parcel #1 until the cash and drug
notes were found inside the parcel, and when probable cause for
the seizure existed.

A parcel is seized, for Fourth Amendment purposes, only
when there is "some meaningful interference with an individual's
possessory interests in that property."  United States v.
England, 971 F.2d 419, 420 (9th Cir. 1992).  Meaningful
interference of mail occurs only "if the delivery of the mail is
'significantly delayed.'"  United States v. Gill, 280 F.3d 923,
931 (9th Cir. 2002)(concurring opinion); see also United States

9

v. England, 971 F.2d at 421 (no seizure where undisputed that packages not delayed by detention).

In this case, the LA Impact Team delivered FedEx Parcel #1 immediately. They provided Defendant with FedEx Parcel #1 without any delay. Since there was no "significant delay," there was no seizure when the LA Impact Team took possession of FedEx Parcel #1 and delivered it to Defendant's home.

B.  ASSUMING SEIZURE *ARGUENDO*,
    DETENTION WAS OF A SHORT DURATION
    AND SUPPORTED BY REASONABLE SUSPICION

Even if this Court were to find a seizure of FedEx Parcel #1, this Court should not suppress the evidence found within FedEx Parcel #1 because whatever detention occurred was de minimus and supported by reasonable suspicion.

The Ninth Circuit outlined the Fourth Amendment analysis regarding the detention of mailed parcels in United States v. Hernandez, 313 F.3d 1206 (9th Cir. 2002).  The Hernandez Court looked, first, at the nature of privacy interest, and second, at the length of delay to determine whether a seizure had occurred.

The Hernandez Court noted, first, that the intended recipient of a mailed parcel has a "reasonable expectation" that the parcel will not be detained beyond the normal delivery date and time.  Id. at 1210.  The Hernandez Court further affirmed that law enforcement may detain a parcel if they have "reasonable

10

and articulable suspicion," determined by a review of the totality of the circumstances, as viewed by those versed in the field of law enforcement. United States v. Hernandez, 313 F.3d at 1210. The Hernandez Court found that the postal inspector in that case had reasonable suspicion to detain the package for a drug dog sniff test, given the presence of five indicators: one, the postal inspector's inability to confirm the name of the return addressee, the use of express mail, the use of a handwritten label, the fact that the package came from a known drug source state, and finally, the fact that the seams were all heavily taped. Id. at 1211.

In this case, the LA Impact Team similarly had reasonable suspicion to believe that FedEx Parcel #1 contained contraband. Someone had paid $65.00 to send a parcel overnight, a common drug trafficking practice. That person had paid in cash, another common drug trafficking practice. The seams of the parcel were all heavily taped, a common drug trafficking practice. The parcel came from Hawaii, a place known for receiving drugs from California methamphetamine dealers. When Officer Gomez attempted to reach the intended recipient, he was unable to, suggesting the use of a fraudulent telephone number. All of these factors, viewed in experience of the members of the LA Impact Team, provided them with reasonable suspicion based upon articulable facts to detain FedEx Parcel #1.

11

FedEx Parcel #1 was detained, moreover, for an
extremely limited period of time.  The LA Impact Team looked at
the parcel, made a telephone call, and went to Defendant's home
to deliver FedEx Parcel #1 themselves.  There was no delay caused
by the detention.

Given the presence of reasonable suspicion, and the <u>de
minimus</u> nature of the detention, this Court should refuse to
suppress any items found within FedEx Parcel #1.

> C.   DEFENDANT'S STATEMENTS AND CONSENTS
>      TO SEARCH WERE PROVIDED VOLUNTARILY

Defendant's statements to Officer Gomez and to
Detective Cater were made voluntarily during a noncustodial
"knock and talk" and therefore should not be suppressed.
Further, because his consent was voluntarily obtained during the
consensual encounter at his home, this Court should refuse to
suppress the contents of FedEx Parcel #1.

The Ninth Circuit found a noncustodial consensual
encounter in a "knock and talk" similar to the case at bar in
United States v. Crasper, 472 F.3d 1141 (9th Cir. 2007).  In
Crasper, a plain clothes officer and three uniformed and visibly
armed officers, walked up to a motel room and knocked on the
door.  A woman peeked from a window near the door and the officer
asked if she would open the door so that he could speak with her.
After about two minutes she opened the door.  The woman and the
defendant, Crasper, came outside and closed the door behind them.

12

Id. at 1143.  The ensuing conversation led to incriminating
statements being made, and incriminating evidence being found.
Id. at 1144-45.

The Crasper Court held that the district court properly
concluded that the "knock and talk" was voluntary and consensual,
"not amounting to a seizure."  Id. at 1145.  The Crasper Court
noted that the officers politely knocked on the door, did not
demand entry, and simply waited outside.  Once the defendant and
female companion emerged from the room, moreover, the officers
did not draw attention to their weapons and did not use physical
force.  Finally, none of the officers blocked the defendant and
his female companion, nor did they tell them that "they could not
leave or return to their room, give them orders, or affirmatively
assert authority over their movements."  Id. at 1146; see also
United States v. Cormier, 220 F.3d 1103 (9th Cir. 2000)(where
officer went to motel room, knocked, asked if she could enter,
and asked if she could look around, encounter purely voluntary
and consensual).

In this case, the officers politely knocked at the door
without announcing their presence in the middle of the day.
Officer Gomez and Detective Cater consistently asked for
permission to do things-to enter, to have conversations, to
examine, to search.  The conversations with Defendant, and the
resultant searches of the parcel, the cooler, and Defendant's

13

home were purely voluntary and consensual.  As such, this Court
should refuse to suppress the contents of FedEx Parcel #1.

> D.  FEDEX PARCEL #2 WAS NOT SEIZED
>     WHEN IT WAS SET ASIDE FOR A
>     CANINE SCREENING, BECAUSE THE DELIVERY
>     OF FedEx PARCEL #2 WAS NOT DELAYED

As noted within Argument A, a parcel is seized, for
Fourth Amendment purposes, only when there is "some meaningful
interference with an individual's possessory interests in that
property."  United States v. England, 971 F.2d at 420.
Meaningful interference of mail occurs only "if the delivery of
the mail is 'significantly delayed.'"  United States v. Gill, 280
F.3d at 931 (concurring opinion).

When FedEx manager Lance Lamons "set aside" FedEx
Parcel #2 for a canine screening at about 2:30 p.m. on January
14, 2003, and when SA Fourmy took FedEx Parcel #2 to the HCPD
Hilo Vice Section at about 3:00 p.m., there were no seizures
under the Fourth Amendment, as the set aside, and the removal to
HCPD, did not significantly delay the delivery of the parcel.
The parcel was not scheduled to be delivered until the next day,
January 15, 2003.  FedEx Parcel #2 was seized only after it was
opened by law enforcement at about 10:00 p.m. on January 14,
2003, after methamphetamine and cocaine had been found inside.
Because there was no interference with the delivery, there was no
seizure, and this Court should refuse to suppress the contents of
FedEx Parcel #2 based on this ground.

14

E.   THE SEARCH WARRANT FOR FEDEX PARCEL
     #2 WAS SUPPORTED BY PROBABLE CAUSE

Even if one excises the information regarding the
canine screenings (assuming that one negative canine screen and
one positive canine screen results in a "wash") from the
affidavit supporting the search warrant, probable cause existed
for the Honorable Leslie E. Kobayashi to issue to warrant, and
this Court should refuse to suppress evidence found within FedEx
Parcel #2 pursuant to the warrant.

A search warrant affidavit must be analyzed by a
reviewing court in a two-part manner.  First, the reviewing court
must consider "whether the magistrate had a substantial basis for
concluding that the affidavit in support of the warrant
established probable cause."  United States v. Hernandez, 937
F.2d 1490, 1494 (9th Cir. 1991).  Probable cause equates to a
"fair probability" that evidence or contraband will be found.
Illinois v. Gates, 462 U.S. 213, 238 (1983).

Second, the reviewing court must consider whether the
affidavit established "a reasonable nexus between the activities
supporting probable cause and the locations to be searched."
United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993),
quoting United States v. Ocampo, 937 F.2d 485, 490 (9th Cir.
1991).  On this second prong, the magistrate must "only conclude
that it would be reasonable to seek the evidence in the place
indicated in the affidavit."  United States v. Pitts, 6 F.3d at

15

1369, quoting United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir.), cert. denied, 474 U.S. 847 (1985).

A magistrate is entitled, moreover, to draw "reasonable inferences about where the evidence is likely to be kept, based upon the nature of the evidence and the type of the offense." United States v. Gil, 58 F.3d 1414, 1418 (9th Cir.), cert. denied, 516 U.S. 969 (1995). A magistrate is entitled to rely upon the opinion of a trained and experienced law enforcement officer in concluding that evidence is likely to be found in a location. Id.

The standard of review for a search warrant is "less probing than de novo review and shows deference to the issuing magistrate's determination." United States v. Hernandez, 937 F.2d at 1494.

In the instant case, perusal of the affidavit reveals probable cause to believe that FedEx Parcel #2 contained drugs or drug-related contraband. The affidavit contained all of the information collected by the LA Impact Team, namely, their suspicions regarding FedEx Parcel #1, their investigation of FedEx Parcel #1 and their seizure of approximately $16,000 from within the lining of the cooler found within FedEx Parcel #1. The affidavit further stated that the search of Defendant's apartment revealed an airbill for FedEx Parcel #2, destined for Mat Rubio, at 800 Kawiki Road in Hilo, Hawaii, and another

16

·

airbill, for a parcel that had gone to Estephani Rosario, in Hilo Hawaii. The affidavit further indicated that a narcotics detection canine had alerted to the positive odor of narcotics in coolers found outside Defendant's home.

In addition, the affidavit contained information from two independent cooperating individuals (CIs). The first CI (CI-1), who lived at 800 Kawiki Road, told the DEA that Denise Mejia in Hilo, Hawaii was expecting a shipment of crystal methamphetamine on or about January 15, 2003. The second CI (CI-2) corroborated the information provided by CI-1 when he/she told the DEA that Denise Mejia was expecting a package to be delivered to Matt Urubio at 800 Kaiwiki Road, Hilo, Hawaii, on January 14, 2003. CI-2 also accurately predicted that the parcel would be coming from a Francisco Orozco, aka Paco in Los Angeles.

In short, the affidavit contained an abundance of information to cause the Honorable Leslie E. Kobayashi to believe that FedEx Parcel #2 would contain drugs. A four-corners examination of the affidavit and the search warrant should cause this Court to refuse to suppress the evidence collected from FedEx Parcel #2.

17

F.  IN THE ALTERNATIVE, THIS COURT
SHOULD REFUSE TO SUPPRESS EVIDENCE
BASED UPON THE GOOD FAITH EXCEPTION

This Court should deny Defendant's requested relief of

suppression, based on the "good faith" exception to the

exclusionary rule.

Evidence gathered as a result of an invalid search

warrant may not be suppressed if the officers objectively would

have had a good faith belief in the validity of the warrant.

United States v. Leon, 468 U.S. 897 (1984).  The reviewing

court's inquiry is "confined to the objectively ascertainable

question whether a reasonably well-trained officer would have

known that the search was illegal despite the magistrate's

authorization."  Id. at 922 n.23.

Under this objective standard, this Court can examine

the search warrant and affidavit, attached at Exhibit C, to see

that a reasonably well-trained officer, given the enumeration of

facts amounting to probable cause, would not know that the search

was illegal.  As such, this Court should decline to suppress any

evidence found in FedEx Parcel #2.

### III.  CONCLUSION

This Court should deny Defendant's motion and refuse to

suppress the evidence found in FedEx Parcel #1, recovered as a

18

result of Defendant's voluntary statements and consents to
search, and found in FedEx Parcel #2.

DATED: March 29, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By *Loretta Sheehan*

LORETTA SHEEHAN
Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

19

CERTIFICATE OF SERVICE

            I hereby certify that, on the dates and by the methods

of service noted below, a true and correct copy of the foregoing

was served on the following at their last known addresses:

**Served Electronically through CM/ECF & via First Class mail:**

      Barry D. Edwards     barryedwards@gmail.com
      2868 Kahawai Street
      Honolulu, HI   96822

      Attorney for Defendant
      FRANCISCO OROZCO


            DATED: March 29, 2007, at Honolulu, Hawaii.